**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Henry William HENKE,
Defendant-Appellant.**

No. 85–2183
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1985.

---

Richard D. Woods, San Antonio, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Bernard E. Hobson, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a conviction for possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Appellant's sole claim on appeal is that the district court erred in overruling his motion to suppress evidence of the marijuana found in his vehicle when it was stopped and searched by a Border Patrol Agent. Appellant asserts that the stop and search of his vehicle were without sufficient grounds and violated his rights under the Fourth, Fifth, and Ninth Amendments. We affirm.

I.

At approximately 11:30 p.m. on November 25, 1984, Border Patrol Agent Armando Ayala noticed a brown pickup with a white camper shell travelling north on U.S. Highway 281 approximately thirteen miles south of Falfurrias, Texas.[1] There is a Border Patrol checkpoint on Highway 281 approximately seven miles south of Falfurrias.[2] Later that night, at approximately 12:15 a.m. on November 26, Agent Ayala spotted the same pickup truck at a roadside park on Highway 281 approximately two miles south of the Falfurrias checkpoint. Agent Ayala drove through the park, jotted down the truck's license plate number, and radioed this information to Border Patrol Agent Jose A. Hernandez. Agent Hernandez was working backup in the area and after receiving Agent Ayala's message he drove to the park and established surveillance of the brown pickup. Hernandez and Ayala were both experienced agents in the area.

Traffic in the area is generally light after 10:00 p.m. Agent Hernandez testified that smugglers of illegal aliens frequently use the roadside park. Sometimes the smugglers leave illegal aliens at the park so that the aliens can walk around the checkpoint and be picked up on the other side. Other times the smugglers wait at the park until the checkpoint is no longer manned and then proceed through it. A flashing red light that can be seen from the roadside park indicates when the checkpoint is manned. When the agents leave the checkpoint, they turn off the light. If the checkpoint remains manned all night, the smugglers often turn around and drive south with their load of illegal aliens. Agent Hernandez testified that the Border Patrol had caught several smugglers travelling south from the Falfurrias checkpoint with their load after waiting in the roadside park.

Agent Hernandez had been watching the truck for approximately two hours when a small car approached from the north, drove into the park, and stopped next to the truck. The occupants of the truck and the

---

1. Agent Ayala was on his way to Encino, Texas to intercept the bus northbound from Encino. Border Patrol agents often follow this bus because illegal aliens frequently disembark between Encino and Falfurrias to avoid the checkpoint south of Falfurrias. Encino is on Highway 281 about twenty miles south of Falfurrias.

2. Falfurrias is approximately eighty to ninety miles from the Mexican border. Highway 281 goes through Falfurrias and on to the border. The border can also be reached by turning off Highway 281 near Rachal about five miles south of Encino onto Highway 755. As the district court noted, the stretch of Highway 281 from the Rio Grande Valley to Encino and on to (and well north of) Falfurrias is indeed a lonely one.

car mingled, going between the car, the truck, and the bathroom. The car stayed at the roadside park approximately two hours and then left heading north on Highway 281. Agent Hernandez radioed this information to the checkpoint and was later informed that the occupants of the car "checked out okay." [3]

Thereafter, around 5:00 a.m., the truck finally left the roadside park and headed south, the direction from which it had come. At this time the flashing red light could still be seen from the park, the checkpoint having remained open all night. Agent Hernandez followed the truck for a short while and then stopped it. As Agent Hernandez approached the truck, he detected a strong odor of marijuana. The driver, Appellant Henke, exited the truck and Agent Hernandez asked his citizenship. He then asked Henke if he had anything in the truck, to which Henke replied he did not. Agent Hernandez asked if he could look into the camper shell.[4] Upon opening the camper shell, Agent Hernandez saw that something was covered up with a blanket. He removed the blanket and found large bundles of marijuana. It was later determined that there were approximately 123 pounds of marijuana in the camper shell.

Appellant was indicted for unlawful possession, with intent to distribute, of approximately 123 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Prior to trial, he filed a motion to suppress, claiming the marijuana was seized without a warrant or probable cause in violation of the Fourth, Fifth, and Ninth Amendments to the United States Constitution. The district court denied the motion to suppress and, in a bench trial, found Henke guilty of know-

ingly, willfully, and unlawfully possessing marijuana with the intent to distribute it. He was sentenced to two and a half years in the federal penitentiary with a two year special parole term and a $1,000 fine.[5] Henke timely filed an appeal to this Court, challenging the district court's failure to grant the motion to suppress.

## II.

To determine whether the motion to suppress was properly denied, we must consider first whether there was a sufficient basis to stop the vehicle, and second whether there was probable cause to search it.

### A. Legality of the Stop

Both parties agree that because the stop was made by a roving border patrol, its legality is governed by whether the agent had a reasonable suspicion that appellant was violating United States immigration laws. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Garcia*, 732 F.2d 1221, 1223 (5th Cir.1984). Reasonable suspicion exists if officers "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Cortez, supra,* 449 U.S. at 416, 101 S.Ct. at 694 (quoting *Brignoni-Ponce, supra,* 422 U.S. at 884, 95 S.Ct. at 2582). As stated by this Court in *Garcia,* there is not one controlling factor that determines reasonable suspicion, but rather the "totality of the circumstances" indicates whether the agent has reason to stop the vehicle. *Garcia, supra* at 1223. "Based upon that

---

**3.** Agent Hernandez testified that the checkpoint agents told him the occupants were "a little bit nervous" but that they seemed all right and were allowed to proceed north.

**4.** Agent Hernandez testified regarding the search as follows:
"A. 'I asked him if he had anything in there and he said no and I said, 'Well, do you mind if I take a look?' He said no. He proceeded to try to open it, but he was fumbling with the

latch like he couldn't open it. I went ahead and said, 'I'll open it,' and I kept my eye on him. I asked him, 'Have you got any weapons on you?' He said, 'No, sir.' So I went ahead and opened the back of the camper shell."

**5.** The district court also imposed a special monetary assessment of $50 pursuant to 18 U.S.C. § 3013.

whole picture the detaining officers must have a particularized and objective basis for suspecting ... the particular vehicle they stopped was engaged in criminal activity." *Id.* at 1223 (quoting *Cortez, supra,* 449 U.S. at 421–22, 101 S.Ct. at 696–97). In forming an objective basis for their decision, officers are entitled to assess the facts in light of their experience in detecting illegal smuggling. *Id.* (quoting *Brignoni-Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582); *United States v. Salazar-Martinez,* 710 F.2d 1087, 1088–89 (5th Cir.1983).

■ Viewing the totality of the circumstances, Agent Hernandez had reasonable suspicion to stop the appellant's truck.[6] Agent Hernandez knew that smugglers frequently used that roadside park, and Henke's use of the park was typical of that made by smugglers. Henke parked where he could see the flashing red light that indicated the checkpoint was open. After waiting for several hours, during which time the checkpoint remained open, Henke turned the truck around and headed back south. Agent Hernandez knew that this activity was typical of the activities of smugglers who often would wait at the park to see if the checkpoint closed. If the checkpoint remained open all night, the smugglers would turn around and head back south to make their run another day. The location of the park was such that it would be highly unusual to drive for any legitimate purpose to that park late at night, wait for several hours there, and then turn around and head back in the direction from which the drive commenced.[7] Henke's vehicle, a truck with a camper shell which could easily hide several illegal aliens, was of a type frequently used by smugglers.[8]

---

6. There appear to be two standards of review applied by this Court to a district court's determination of whether reasonable suspicion exists. In some instances we have applied the clearly erroneous standard. *See United States v. Santia Manriquez,* 603 F.2d 575, 578 (5th Cir. 1979) (per curiam) (district court's findings are entitled to our acceptance unless clearly erroneous), *modified on other grounds,* 609 F.2d 1162 (1980); *United States v. Cruz,* 581 F.2d 535, 540–41 (5th Cir.1978) (en banc) (this court "left with the definite and firm conviction" that reasonable suspicion did not exist); *see also United States v. Gomez-Diaz,* 712 F.2d 949, 951 (5th Cir.1983) (consent as an exception to warrant requirement is determined from the totality of the circumstances and district court's determination will not be disturbed unless clearly erroneous), *cert. denied,* 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984); *United States v. Passmore,* 671 F.2d 915, 917 (5th Cir.1982) (denial of motion turned on the totality of the circumstances and the district court must be affirmed unless clearly erroneous).

   In other instances, this court has applied the clearly erroneous standard to the findings concerning the various relevant individual factors, but has appeared to conduct an independent review as to whether the factors expressly or impliedly found suffice for reasonable suspicion. *See United States v. Garcia,* 732 F.2d 1221, 1225 (5th Cir.1984) (court looked at all factors and said agent could have reasonably concluded defendant was violating immigration laws); *United States v. Pacheco,* 617 F.2d 84, 86 (5th Cir.1980) ("we" must determine whether articulable facts reasonably warrant suspicion); *United States v. DeWitt,* 569 F.2d 1338, 1339 (5th Cir.1978) (per curiam) ("actions were such as to reasonably arouse the suspicion of the agent"); *see also United States v. Johnstone,* 574 F.2d 1269, 1272 (5th Cir.1978) (to determine if warrantless search was constitutional "we must determine whether the facts ... would 'warrant a man of prudence and caution in believing that the offense had been committed' ").

   It is not necessary in this case to determine which is the correct standard because under either standard of review the facts found by the trial court show that Agent Hernandez had reasonable suspicion to stop Henke's truck.

7. In *United States v. DeWitt,* involving the same roadside park, Border Patrol agents became suspicious after the defendant had what appeared to be a prearranged meeting in the park and then headed north at a time when the checkpoint was closed. 569 F.2d 1338, 1339 (5th Cir.1978). The agent in *DeWitt* testified that, although he thought local people might legitimately arrange a meeting in that park, it was unusual for one not from Falfurrias to drive through Falfurrias to meet at the park at night. *Id.* at 1339. This Court held that these actions together with the agent's knowledge that the park was used by illegal alien smugglers was sufficient to reasonably arouse the agent's suspicion and thus the stop was justified. *Id.*

8. Agents' knowledge that camper shells frequently are employed to smuggle illegal aliens has been used previously by this Court as a factor in the calculus of reasonable suspicion. *See Garcia, supra,* at 1224; *see also United States v. Brignoni-Ponce,* 422 U.S. 873, 885, 95 S.Ct.

Appellant argues that Falfurrias is far enough from the border that Agent Hernandez could not know that the truck had come from the border and therefore could not have had reasonable suspicion. This Court has held that the belief that the vehicle has crossed the border is not necessary if other factors constitute reasonable suspicion to stop the vehicle. *Garcia, supra,* at 1223–24; *United States v. Varela-Andujo,* 746 F.2d 1046, 1048 (5th Cir.1984) (agent not justified in believing the vehicle had crossed the border but other factors constituted adequate "articulable facts" to justify reasonable suspicion); *United States v. Pacheco,* 617 F.2d 84, 86 (5th Cir.1980) ("Absence of a reason to believe the vehicle has come from the border, however, is not alone dispositive."). We are, however, required to examine the remaining factors charily. *Garcia, supra,* at 1224; *Salazar-Martinez, supra,* at 1088. A careful review of the remaining factors, as discussed above, indicates that Agent Hernandez had reasonable suspicion to stop Henke based on his experience, the well-known use of the roadside park by smugglers, and Henke's activities. *United States v. DeWitt,* 569 F.2d 1338 (5th Cir. 1978).

### B. Legality of the Search

The next question is whether the search was legal. Although only reasonable suspicion is needed to stop a vehicle for an immigration check, probable cause is necessary in order to search the vehicle. Agent Hernandez testified that he smelled marijuana as he approached the vehicle. Given that the vehicle contained 123 pounds of marijuana, it is reasonable that he did indeed perceive the odor of marijuana. Once the officer smelled the marijuana, he had probable cause to search the vehicle. *United States v. Gordon,* 722 F.2d 112, 114 (5th Cir.1983) (odor of marijuana from motor home supplied probable cause to search vehicle); *United States v. McLaughlin,* 578 F.2d 1180, 1183 (5th Cir.

2574, 2582, 45 L.Ed.2d 607 (1975) ("Aspects of the vehicle itself may justify suspicion." For

1978) (probable cause clearly existed when agent detected odor of marijuana); *United States v. De Witt,* 569 F.2d 1338, 1339 (5th Cir.1978) (agent smelled marijuana when approaching car and this gave probable cause to search car; therefore search was legal).

### III.

The district court properly denied the motion to suppress. Appellant's activity in parking and waiting for so long at a remote site frequently used by illegal alien smugglers and then turning around and heading back south when the checkpoint remained open all night could reasonably cause one of Agent Hernandez' training to suspect that the appellant was transporting illegal aliens. Agent Hernandez knew that smugglers often used the park in that manner, and he was entitled to rely on his knowledge and past experience in detaining illegal aliens in deciding to stop the vehicle. *United States v. DeWitt, supra.* Once he stopped the vehicle, Agent Hernandez smelled the marijuana, and this gave him probable cause to search the vehicle. For these reasons, the judgment of the district court is affirmed.

AFFIRMED.

example, certain station wagons with large compartments are frequently used for smuggling.).