UNITED STATES of America,
Plaintiff-Appellant,

v.

Jesus TARANGO-HINOJOS,
Defendant-Appellee.

No. 85–1719
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 13, 1986.

Michael R. Hardy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellant.

Robert Ramos, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellee.

Before GEE, RANDALL, and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

The government appeals from the district court's suppression order as well as its order denying the government's motion to reconsider. Concluding that the government had probable cause to arrest, we reverse the order of the district court.

## I.

A United States Border Patrol agent saw a large group of apparently illegal aliens walking toward her van on Eighth Street in El Paso, Texas, on July 29, 1985. When the aliens saw the van, they separated and fled. The agent caught several of them and loaded them into her vehicle. Several minutes later, having resumed driving, the agent saw the defendant, Jesus Tarango-Hinojos ("Tarango"), standing in the middle of Fifth Street. The agent called out to him, but Tarango did not respond. Meanwhile, one of the allegedly illegal aliens whom the agent had arrested and placed in the van told her that she recognized Tarango as an illegal alien who sometimes attempted to rob other illegal aliens as they crossed the border. The agent was familiar with the illegal who provided this information (having arrested her before), and several others in the van confirmed that Tarango was an illegal alien. Consequently, the agent stopped the van and got out to question Tarango. When asked his status, Tarango answered that he was a resident legal alien; but when asked to produce his resident-alien identification card, Tarango stated that he had left it at home. Tarango declined to answer any further questions.

The agent, who believed that Tarango was intoxicated, ordered him into the van. Tarango resisted but was forced inside. Tarango and the others were taken to the Port of Entry for processing. Before administering *Miranda* warnings, the agent took Tarango's name and date of birth, which she then called in to her radio dispatcher. An hour later, the information the agent had called in proved fruitful: The border patrol received word that INS records indicated that Tarango was an illegal alien who had been previously deported.

Tarango was indicted for illegal entry into the United States after deportation, in violation of 8 U.S.C. § 1326. He filed a motion to suppress, contending that all the evidence against him was obtained in consequence of an illegal arrest.

Following a suppression hearing, at which the border patrol agent testified, the district court ruled that although the agent had reasonable suspicion to question Tarango, she did not have probable cause to arrest him. The court therefore ordered that the evidence obtained as a result of the illegal arrest be suppressed. Approximately two weeks later, the government filed a motion for reconsideration, calling to the court's attention a statute which requires resident aliens age eighteen and over to have their identification cards with them at all times. 8 U.S.C. § 1304(e). The government argued that this statute provided probable cause for the arrest of Tarango. The district court ruled that by failing to raise § 1304(e) at the original suppression hearing, the government had waived its right to raise it as a basis for probable cause.

The government appeals from the original suppression order as well as the district court's order denying the motion for reconsideration. Because we agree with the government that the agent did in fact have probable cause to arrest Tarango, we do not reach the question of whether the district court abused its discretion in denying the motion for reconsideration.

## II.

An agent may briefly stop a suspected illegal alien for questioning if the agent has reasonable suspicion based upon articulable facts. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Henke*, 775 F.2d 641 (5th Cir.1985). Reasonable suspicion, a standard which is less

burdensome than the probable cause standard, may later blossom into probable cause if additional facts come to the attention of the detaining officer. *Brignoni-Ponce,* 422 U.S. at 881–82, 95 S.Ct. at 2580–81; *Henke,* 775 F.2d at 645. The district court ruled in this case, and we agree, that the agent's original detention of Tarango, coming moments after she had seen approximately seventy-five aliens quickly scatter, and being based in part on another alien's asserted recognition of Tarango, was supported by reasonable suspicion. *Cf. United States v. Nunn,* 525 F.2d 958, 959 (5th Cir.1976).

■ Once the agent placed Tarango in the van, she effected an arrest. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 212–16, 99 S.Ct. 2248, 2256–59, 60 L.Ed.2d 824 (1979); *United States v. Morin,* 665 F.2d 765, 768–70 (5th Cir.1982). If, therefore, there was probable cause to justify the arrest, it had to have existed at the moment she placed Tarango into the van. The district court acknowledged that whether probable cause existed depends upon the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *United States v. Garcia,* 732 F.2d 1221, 1223 (5th Cir.1984). The government argued below, and now urges on appeal, that "Tarango's failure and evident inability to produce the alien registration card ... as well as his avoidance of questions about his residence, point of origin, and destination, permitted [the agent] to regard his claim to resident-alien status as a fabrication," and hence, the agent's "reasonable suspicion of Tarango's illegal entry had ripened into probable cause."

■ In reviewing a trial court's ruling on a motion to suppress based on live testimony at a suppression hearing, we accept the trial court's purely factual findings unless they are clearly erroneous or influenced by an incorrect view of the law. *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984). Probable cause for arrest exists only "when the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been or is being committed." *United States v. Woolery,* 670 F.2d 513, 515 (5th Cir.), *cert. denied,* 459 U.S. 835, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982); *see also United States v. Tolliver,* 780 F.2d 1177, 1185 (5th Cir.1986). The factors considered in determining whether probable cause exists "are not technical ones, 'but rather factual and practical ones of everyday life on which reasonable and prudent persons, not legal technicians, act.'" *Maldonado,* 735 F.2d at 815 (quoting *Woolery,* 670 F.2d at 515). Applying these standards to this case, we conclude that the border patrol agent had probable cause to arrest Tarango.

The agent who arrested Tarango was, at the time of the arrest, a seven year veteran of the border patrol. She had served in the El Paso area for approximately four years. She knew, and so testified at the suppression hearing, that the West Railroad Bridge, near her base in El Paso, serves as a major crossing point where undocumented Mexicans enter the United States illegally. In addition, the agent knew from experience, and so testified, that large groups of aliens, sometimes as many as two hundred at a time, attempt to rush across the bridge during the hours that border patrol agents change shifts, at sometime between 8 and 9:30 a.m.

At 8:45 a.m., the agent spotted Tarango enter the street from an alley. She testified that the alley from which Tarango emerged was one frequently used by aliens illegally entering the city. Further, the agent had just moments before seen a large group of aliens scatter. Finally, other illegal aliens in the van indicated to the agent that they recognized Tarango as an illegal alien who robbed other aliens as they crossed the border. The agent therefore stopped her van next to Tarango to

question him. He would not meet her eyes and refused to acknowledge her presence. When she got out of her van to question him, Tarango was uncooperative. His claim that he had left his resident-alien card at home is a claim which, according to the agent's testimony, illegal aliens often make.

We conclude that, although this is a close case, the totality of these circumstances provided the agent with probable cause to arrest Tarango as an illegal alien. Accordingly, the order of the district court granting Tarango's motion to suppress is

REVERSED.