UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos Armando SANCHEZ,
Defendant–Appellant.

No. 88–1388
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1988.

Ray Velarde, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., Clifford R. Cronk, III, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Carlos Armando Sanchez appeals from an order by the district court denying his motion to suppress evidence seized during the warrantless search of his automobile. Concluding that the warrantless search by law enforcement officials of the two suitcases contained in the trunk of Sanchez' vehicle was not inconsistent with the fourth amendment, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On October 14, 1987, Agent Nardolillo of the Colorado Bureau of Investigation contacted Agent Villaruel of the Drug Enforcement Agency in El Paso, Texas, regarding an investigation of the defendant Carlos Armando Sanchez for illegal drug distribution. Specifically, Nardolillo informed Villaruel that Sanchez had agreed to sell Nardolillo 58,000 units of the controlled substance Ionamin and that Sanchez had previously sold Ionamin to a confidential informant in Colorado. Villaruel himself was aware that Sanchez had been arrested earlier that same year in the El Paso area for the unlawful sale of Ionamin.

The next day, agents Nardolillo and Villaruel arranged a meeting with Sanchez for the purpose of negotiating the purchase of 100,000 units of Ionamin from Sanchez. The meeting between the agents and Sanchez occurred at a designated restaurant in El Paso. At that meeting, it was agreed that Sanchez would deliver the Ionamin to Nardolillo and Villaruel at the same El Paso restaurant later that day; however, Sanchez apparently only agreed to deliver to the restaurant half of the 100,000 units of Ionamin purchased by the agents. At approximately 4:40 p.m. that same day, Sanchez arrived at the El Paso restaurant where Villaruel and Nardolillo were already waiting. After Sanchez informed the agents that he did in fact bring the Ionamin with him to the restaurant, the agents requested to see the merchandise. Sanchez then opened the trunk of his car and pointed to two soft-sided burgundy suitcases contained in the trunk. At this point in the transaction, for apparently inexplicable reasons, Sanchez became ex-

tremely agitated and nervous, jumped in his car, and drove away from the parking lot of the restaurant at a high rate of speed. Other agents involved in the investigation who were conducting surveillance of the drug transaction pursued Sanchez in his vehicle, ultimately stopping Sanchez in his car only a few blocks from the site of the intended drug sale. The pursuing agents then removed Sanchez from his car and placed him in a government vehicle.

Immediately thereafter, agents Villaruel and Nardolillo arrived at the scene and moved Sanchez's vehicle, which was still running when the agents arrived, off the highway. The agents next opened the trunk of Sanchez's car and then opened the two burgundy suitcases in the trunk which Sanchez had previously indicated as containing Ionamin. As expected, the suitcases did indeed contain several packages of Ionamin. The agents then conducted a search of the vehicle for contraband. After the search of Sanchez's vehicle, which failed to reveal further Ionamin, Agent Villaruel advised Sanchez of his rights. Sanchez, indicating his understanding of his rights, then informed the agents that more Ionamin pills were located at his home. The agents obtained Sanchez's consent to search his home and the eventual search of Sanchez's residence revealed additional Ionamin pills in the bedroom and in a spare tire in the garage.

Thereafter, a grand jury indicted Sanchez of one count of possession with intent to distribute Ionamin in violation of 21 U.S.C. § 841(a)(1). Sanchez subsequently filed a motion to suppress the evidence seized in the search of his suitcases and home. The district court denied the suppression motion reasoning that the warrantless search of Sanchez's vehicle was justified by the automobile exception to the warrant requirement. Following the denial of his motion to suppress by the district court, Sanchez entered a conditional plea of guilty reserving his right to appeal the denial of the motion to suppress. The district court thereafter sentenced Sanchez to three years' imprisonment, with a six month period of confinement. The balance of the three year prison term was suspend-ed. Sanchez now appeals the denial of his motion to suppress.

## II. DISCUSSION

On appeal, Sanchez contends that the warrantless search of the two burgundy suitcases in the trunk of his car constituted an unreasonable search in violation of the fourth amendment. In response, the Government seeks to justify the warrantless search of the suitcases by invoking the automobile exception to the warrant requirement. The automobile exception was first enunciated by the Supreme Court in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and essentially allows a law enforcement officer to conduct a warrantless search of an automobile under circumstances where the officer believes the autombile contains contraband which is being transported illegally. *Id.* at 155–56, 45 S.Ct. at 285–86. The automobile exception evolved out of the concern that law enforcement officials should be able to swiftly secure illicit contraband where that contraband is located in an automobile which is capable of being easily and quickly moved to a different locality or jurisdiction.

Since the *Carroll* decision, the pronouncements by the Supreme Court on the automobile exception have been less than definitive; as a result, the case-by-case application of the automobile exception has been at times a difficult endeavor. Following *Carroll*, the Supreme Court, in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), held unconstitutional the warrantless search of a footlocker located in the trunk of an automobile. In *Chadwick*, law enforcement officials determined that a footlocker contained contraband prior to the moment when the suspect placed the footlocker in the trunk of a vehicle. Only after the footlocker was placed in the trunk of the vehicle did the agents conduct a warrantless search of the car and the footlocker in the trunk. On these facts, the Supreme Court declined to apply the automobile exception as a justification for the warrantless search of the footlocker, reasoning that "a person's expectations of privacy in personal luggage are substantially greater than in an auto-

mobile." *Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484. In effect, the *Chadwick* decision appeared to reaffirm the general principle that closed packages and containers could not be searched without a warrant even if those packages and containers were movable and in a public place.

Following *Chadwick,* the Supreme Court once again limited the automobile exception in its opinion in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Sanders,* a state police officer received information that an individual would arrive at the airport at a particular time carrying a green suitcase containing marijuana. The officer arrived at the airport and observed the suspect arrive and retrieve a green suitcase from the baggage claim area. Instead of stopping the suspect at the airport, however, the police officer allowed the suspect to place the green suitcase containing the marijuana in the trunk of a taxicab. After the suspect had departed from the airport in the taxicab, police officers followed the vehicle and ultimately stopped it several blocks from the airport. The officers then seized the suitcase from the trunk of the taxicab, and, without a warrant, searched the suitcase and discovered marijuana.

As in *Chadwick,* the Supreme Court in *Sanders* rejected the use of the automobile exception as a justification for the warrantless search of personal luggage, even though that luggage was located in a moving vehicle. 442 U.S. at 765, 99 S.Ct. at 2594. Notably, in *Sanders,* the police officers had probable cause to search the suitcase prior to the moment when the suitcase was placed in the trunk of the taxicab; however, the officers did not possess probable cause to search the entire taxicab. "[T]he mere fact that the suitcase had been placed in the trunk of the vehicle did not render the automobile exception of *Carroll* applicable." *United States v. Ross,* 456 U.S. 798, 812, 102 S.Ct. 2157, 2166, 72 L.Ed.2d 572 (1982).

Thus, after the Supreme Court decisions in *Chadwick* and *Sanders,* it appeared that the Supreme Court was resisting a broad interpretation of the automobile exception

to the warrant requirement; however, such a perception was dispelled by the later opinion of the Supreme Court in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which addressed the warrantless search of a brown paper bag and zippered red leather pouch during the warrantless search of an automobile. In concluding that both the search of the bag and the search of the pouch were justified by the automobile exception, the Supreme Court held that "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross,* 456 U.S. at 824-25, 102 S.Ct. at 2172-73. In *Ross,* the Supreme Court appeared to distinguish its previous decisions in *Chadwick* and *Sanders* on the basis that the police officers in those cases did not possess probable cause to search the suspects' entire vehicle, but only the containers within the vehicle. *Id.* at 817, 102 S.Ct. at 2168.

Following *Ross,* the Supreme Court further refined the automobile exception to the warrant requirement in *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). In *Johns,* the Supreme Court upheld the validity of the warrantless search of packages discovered in the back of a pickup truck on the basis of the automobile exception despite the fact that the search of the packages did not occur until three days after the seizure of those packages from the truck. In upholding the search, the Supreme Court reaffirmed the general rule enunciated in *Ross* defining the scope of the *Carroll* automobile exception.

[T]he exception to the warrant requirement recognized by *Carroll* allows a search of the same scope as could be authorized by a magistrate. 'A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.' Although probable cause may not generally justify a warrantless search of a container, ... the protection afforded by the Fourth Amendment varies in differ-

ent settings. 'An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband.' Consequently, 'if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'

*Johns,* 469 U.S. at 483–84, 105 S.Ct. at 884–85 (citations omitted). This Circuit has subsequently followed the above definition of the automobile exception. *See United States v. De Los Santos,* 810 F.2d 1326, 1337–38 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987); *United States v. Martinez,* 808 F.2d 1050, 1056 (5th Cir.), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987).

Applying the automobile exception as enunciated by the Supreme Court in *Ross* and as reaffirmed in *Johns* to the facts of the instant case, we are confronted with a scenario that walks the proverbial line between *Sanders* type cases and *Ross* type cases. In one respect, the instant case is similiar to the facts in *Sanders* as the drug agents in the instant case initially focused on the burgundy suitcases contained in the trunk of Sanchez's vehicle, not the vehicle itself, as the source of the Ionamin. However, the facts of the instant case also parallel those in *Ross* as agents Nardolillo and Villaruel possessed probable cause to believe that Sanchez's vehicle, as well as the burgundy suitcases, contained Ionamin. After considering the policy underlying the automobile exception to the warrant requirement, we are persuaded that the instant case more closely resembles the facts of *Ross* than those of *Sanders;* therefore, the warrantless search of Sanchez's burgundy suitcases revealing Ionamin did not run afoul of the fourth amendment. The automobile exception to the warrant requirement consitituted a legitimate constitutional basis for the search. Critical to

our conclusion today that the automobile exception applies to the warrantless search of Sanchez's suitcases is the fact that agents Nardolillo and Villaruel possessed probable cause to search Sanchez's vehicle itself for Ionamin, as well as possessing probable cause to search the suitcases. Further, the agents in the instant case were not aware that the burgundy suitcases contained Ionamin prior to observing those suitcases in the trunk of Sanchez's vehicle.[1]

In sum, the automobile exception to the warrant requirement is an area of the law which requires great caution in application as the exception might allow police officers to circumvent the warrant requirement which is fundamental to the fourth amendment right of every citizen to be free from unreasonable searches. Bearing in mind the above concern, we conclude that, on the facts of the instant case, the warrantless search of the burgundy suitcases located in the trunk of Sanchez's vehicle was justified by the automobile exception to the warrant requirement. The agents possessed the authority to search every part of Sanchez's car and its contents, including the burgundy suitcases, which might conceal the Ionamin—the object of their search. Accordingly, we affirm the decision of the district court denying Sanchez's motion to suppress.

AFFIRMED.

---

**1.** In this respect, we intimate no opinion as to the constitutional validity of a warrantless search of an individual's luggage on the basis of the automobile exception where law enforcement officials possess knowledge that the luggage contains contraband prior to the moment when the luggage is placed in a vehicle, but the officers also have probable cause to search the entire vehicle for contraband.