UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony Duane REED,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Anthony Duane REED,
Defendant–Appellee.

Nos. 88–1779, 88–1905
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1989.

Helen M. Eversberg, U.S. Atty., Michael R. Hardy, LeRoy Morgan Jahn, Asst. U.S. Attys., San Antonio, Tex., for U.S.

Mike Barclay, Alpine, Tex. (Court-appointed), for Anthony Duane Reed.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

This case consists of two consolidated appeals. In one, Anthony Duane Reed (Reed) appeals his conviction for conspiracy to possess with intent to distribute, and for possession with intent to distribute, over five hundred grams of cocaine in violation of 21 U.S.C. sections 841(a)(1) and 846. In the other, the government appeals the district court's downward departure from the applicable sentencing guideline range for these offenses. For the reasons set forth below, we affirm Reed's conviction, the only challenge to which relates to the denial of his motion to suppress, but vacate Reed's sentence and remand the case for resentencing.

*Facts and Proceedings Below*

In the late evening of June 27, 1988, Reed and one Patrick Garrett (Garrett) left Compton, California in a 1988 Mercury Sable station wagon and proceeded eastbound on Interstate 10. At approximately 12:20 p.m. on June 28, 1988, Garrett and Reed reached the Sierra Blanca, Texas permanent checkpoint. Although Garrett was driving the vehicle at the time, it was registered to Reed and one Constance Brown (Brown), Reed's girlfriend.[1] Once at the primary inspection area, Border Patrol Agent Robert Harvey (Agent Harvey) asked Reed and Garrett their citizenship. Both said nothing and continued to look straight ahead. Agent Harvey then leaned closer to the window and asked them whether they were American citizens. Agent Harvey testified that Reed and Garrett laughed nervously and responded

"yeah." However, both Reed and Garrett continued to avoid making eye contact with Agent Harvey. As Agent Harvey leaned closer to the window, he also detected the odor of burnt marihuana. He then immediately directed the vehicle to the secondary inspection area. Once there, he requested that either Reed or Garrett open the rear door of the station wagon. However, Reed, who admitted that he was the owner of the vehicle, said that he had forgotten the key.[2] Shortly thereafter, Agent Harvey asked Reed whether he had a key to a locked compartment in the rear of the vehicle, but it, too, had been conveniently left in California. Reed then explained that the agents should not break the lock to open the compartment, as this would make his "old lady" (Brown) mad since the compartment, said Reed, contained only children's toys, if anything. Another Border Patrol Agent soon opened the compartment with a crowbar and discovered over four pounds of cocaine. Both Reed and Garrett were then arrested and subsequently indicted by a grand jury. After the district court denied their motion to suppress on August 29, 1988, the case proceeded to trial. After a two-day jury trial, Reed was convicted on both counts as charged.[3] Shortly thereafter, on September 26, 1988, the district court sentenced him to sixty-eight months' imprisonment, followed by four years of supervised release. These now consolidated appeals followed.

*Discussion*

I. *Reed's Appeal*

Reed's sole contention on his appeal is that the district court erred in failing to grant his motion to suppress because, as he asserts, there was no probable cause to search his vehicle. This contention is without merit. We agree that the Sierra Blanca checkpoint is not the functional equivalent of a border, and that, as a

1. Reed occasionally referred to Brown as his wife.

2. Reed later admitted that he had the key when he left California, but claimed that it had somehow disappeared on the way to Texas.

3. Garrett was acquitted.

result, Border Patrol agents are required to have probable cause in order to search a vehicle there. *United States v. Jackson,* 825 F.2d 853 (5th Cir.1987) (en banc), *cert. denied,* — U.S. —, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988). However, viewing the evidence in the light most favorable to the party prevailing below, *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir. 1984), the record before us adequately supports the district court's determination that the Border Patrol had probable cause to search Reed's vehicle.

Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "[P]robable cause is the sum total of layers of information" available to law enforcement officials. *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). The factors relevant to probable cause are not technical ones, but rather "factual and practical ones of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Tarango–Hinojos,* 791 F.2d 1174, 1176 (5th Cir.1986). Furthermore, a "trained officer draws inferences and makes deductions ... that might well elude an untrained person," and evidence collected "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

■ In the present case, Agent Harvey observed several factors that in his experience led him to believe that criminal activity was underfoot. He noticed that Reed and Garrett appeared nervous and refused to make eye contact. *See, e.g., United States v. Lanford,* 838 F.2d 1351, 1354 (5th Cir.1988). More importantly, he detected the distinct odor of burnt marihuana, and this in itself would have justified the subse-

quent search of Reed's vehicle. *United States v. Hahn,* 849 F.2d 932, 935 (5th Cir.1988); *United States v. Sawyer,* 849 F.2d 938 (5th Cir.1988); *United States v. Villareal,* 565 F.2d 932 (5th Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978). Moreover, the detection of the odor of marihuana justified a search of the entire vehicle, including the locked compartment that was a likely place to conceal contraband. *United States v. Sanchez,* 861 F.2d 89, 91–92 (5th Cir.1988) (*citing United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 884–85, 83 L.Ed.2d 890 (1985)).

It is not controlling that the substance eventually discovered in the vehicle was cocaine, and that no marihuana was ever found. It is settled that the presence or absence of probable cause to search is not determined by what the search does or does not ultimately reveal. The factual underpinning for the search of Reed's vehicle was primarily Agent Harvey's detection of the odor of marihuana. Regarding this odor, Reed argues that since no marihuana or marihuana residue was found in the vehicle, it would have been impossible for Agent Harvey to smell burnt marihuana. We reject this contention. The government advanced several plausible theories for this occurrence,[4] and the resolution of this issue simply boiled down to a credibility choice. Reed's testimony throughout the proceedings contains a multitude of what may be most charitably described as self-contradictions, and Agent Harvey's testimony that he clearly smelled marihuana from the vehicle was positive and unequivocal. The district court's decision to believe Agent Harvey rather than Reed, and thereby deny Reed's motion to suppress, must be affirmed.

## II. *The Government's Appeal*

The government appeals Reed's sentence. According to the sentencing guidelines, the undisputed offense level for Reed's offense is 28. Viewing this score in

---

4. For instance, the government noted that Reed could have taken precautions to let the ashes or marihuana residue fall into a cup or other disposable container, which was then discarded before the vehicle reached Sierra Blanca.

light of the relevant criminal history category, the guideline range for this offense is 78–99 months.[5] However, at the sentencing hearing on September 26, 1988, Reed argued that his score should be lowered by two points (from a 28 to a 26) due to his acceptance of responsibility.[6] The district court declined to lower Reed's score on this basis, stating "I am not going to allow the 2 points for acceptance of responsibility. The total offense level is 28." However, upon pronouncing Reed's 68–month sentence, the court stated:

> "For the record, let the record reflect that I will depart from the Guidelines.... The reason is that although I don't think the 2 points ought to be allowed, this is because of the amount of the cocaine.... [I]t would appear to me that if I went with the ... more severe Guidelines of 28 as opposed to 26, I would be charging for the use of the courthouse.... I believe Mr. Reed, that you are guilty of the offense. I also agree, however, there is something good in you...."

The government appeals this downward departure from the 78–99 month guideline range.

■■■ We have held that in a case where the district court makes findings of fact that are not clearly erroneous and applies the guidelines to those findings, the court need not offer further reasons justifying the sentence. *United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). However, in a case such as this where the district court *departs* from the guidelines, the court must "offer reasons explaining why the departure is justified in terms of the policies underlying the sentencing guidelines." *Id.* In Reed's case, the reasons offered by the district court as a matter of law do not justify departure from the guidelines.

The primary reason for the district court's downward departure appears to be its view that although Reed was not entitled to a subtraction of two points for acceptance of responsibility, a failure to adjust his sentence downward would penalize him for pleading not guilty and for exercising his constitutional right to a jury trial. This is incorrect. Section 3E1.1 of the guidelines provides for a reduction in sentence of a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility" for his conduct. In *United States v. White*, 869 F.2d 822 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033, we recognized that a "defendant who puts the government to its proof by challenging factual guilt may find it difficult, after conviction, to persuade the district court that he is entitled to this reduction." *Id.* at 826. However, this difficulty does not mean that a defendant is penalized for failing to plead guilty. *See also United States v. Thomas*, 870 F.2d 174, 177 (5th Cir.1989).

This type of situation is specifically covered by the guidelines. Section 3E1.1(b) states that "[a] defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial," and application note 2 to section 3E1.1 states that a "defendant may manifest sincere contrition even if he exercises his constitutional right to a trial." Moreover, in the converse situation, a guilty plea does not in itself entitle a defendant to a reduction in sentence. *White*, 869 F.2d at 826. In any event, the clear focus of section 3E1.1 is "affirmative acceptance of personal responsibility" manifested by "sincere contrition," and whatever words one used to describe Reed's conduct, "sincere contrition" would not be on the list.[7] In any event, the district court,

---

5. Reed's criminal history score is undisputed.

6. Reed's sentence of 68 months is within the 63–78 month guideline range for a level 26 offense.

7. Throughout the proceedings, Reed's conduct was marked by self-contradiction and repeated

efforts to shift responsibility to others. Reed testified that he made the trip to Texas in order to drive a new acquaintance (whom he stated that he did not particularly trust) home to Fort Worth. Meanwhile, Brown, the mother of Reed's two children (and who was pregnant with a third), was put on a bus for a thirty-hour ride to

with ample support in the record, expressly declined to find acceptance of responsibility. However, it erred in departing from the guidelines on the legally improper basis that not to do so to the same extent as if the requested adjustment for acceptance of responsibility had been allowed would wrongfully penalize the defendant for pleading not guilty or amount to "charging for the use of the courthouse."

■ The district court's only other rationale for departing from the guidelines was its comment that "there is something good in you (Reed)." However, as we made clear in *United States v. Burch*, 873 F.2d 765 (5th Cir.1989), sentencing under the guidelines is to be based on the crime committed, not the offender. *Id.* at 768–69. While certain characteristics of an offender, such as prior criminal conduct, are relevant to a sentence, these must be directly relevant to the crime committed. *Id.* at 769. There is nothing in the sentencing guidelines that justifies departure from the guideline range on the basis of any factor such as the district court's assessment that "there is something good in you." Statements of this kind used to justify guideline departure "partake of the model of penology that Congress rejected in the Sentencing Reform Act." *Id.*

For the foregoing reasons, we find no error in the district court's denial of Reed's motion to suppress, and Reed's conviction is hence affirmed. However, we vacate Reed's sentence and remand the case for resentencing consistent herewith.

Conviction AFFIRMED, sentence VACATED and cause REMANDED for resentencing.

---

visit relatives in Mississippi, and this occurred despite the fact that she, not Reed, had made all the payments on the vehicle. In a second instance, Reed contended after his arrest that Garrett had slipped the cocaine into the compartment while Reed was sleeping, an unlikely story given Reed's testimony that the key to the compartment had accidentally been left in California before Garrett entered the vehicle. There were many other self-contradictions in Reed's various statements.