UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-5554
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

                  versus

LYNDA MARIE KELLY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
              Western District of Texas
_____

(May 13, 1992)


Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

     The Government appeals the district court's order granting defendant-appellee Lynda Marie Kelly's (Kelly) motion to suppress evidence.  Concluding that the district court erred as a matter of law, we reverse and remand.

### Facts and Proceedings Below

     At approximately 1:10 a.m. July 19, 1990, Kerr County Deputy Sheriff James Trolinger (Trolinger) was patrolling on Interstate Highway 10 in Kerr County, when he spotted a 1990 Nissan with California license plates that appeared to be speeding.  Trolinger

turned on his radar and confirmed that the Nissan was going eighty-four miles per hour in a sixty-five miles per hour zone. Trolinger stopped the car. Kelly's codefendant, Donald Craig McCaney (McCaney), was driving, and Kelly was riding in the passenger seat. Trolinger radioed his location and the California license plate number of the Nissan to the sheriff's office dispatcher.

Trolinger then approached the Nissan. McCaney rolled down his window, and as Trolinger walked forward, he could smell the odor of burnt marijuana. Trolinger asked McCaney for his license and proof of insurance; McCaney handed Trolinger a folded piece of paper with his name, California address, and driver's license number on it. Kelly handed Trolinger a driver's license with her picture. Trolinger asked McCaney if he had a valid driver's license. McCaney answered affirmatively, but that the folded paper was all that he had with him. Trolinger asked who owned the Nissan. Kelly responded that it was a rental, but was unable to find the rental papers.

Trolinger then heard through the ear piece of his portable radio the sheriff's office advice that the Nissan was reported stolen. While waiting for confirmation, Trolinger asked McCaney and Kelly to step out of the car and walk to its rear. McCaney asked what was wrong, and Trolinger responded that he simply wanted to make sure that McCaney's driver's license was valid. Both McCaney and Kelly consented to a pat down, but no weapons were found. Trolinger then separated McCaney and Kelly and questioned them individually about their destination. Kelly purportedly responded that they were going to San Antonio to visit McCaney's

2

sick relatives.  McCaney answered that they were headed to San Antonio to see Kelly's sick friends.

Ten minutes after the initial stop, Deputy Sheriff Philip Karasek (Karasek) arrived at the scene as backup.  Trolinger told Karasek that he had smelled marijuana emanating from the car and asked Karasek to check inside the vehicle for weapons or narcotics.  Karasek leaned his head into the car and saw a box of ammunition lying on top of a sports bag on the back seat.  Karasek reported his discovery to Trolinger.  McCaney and Kelly were then arrested, handcuffed, and read their rights.

After arresting McCaney and Kelly, Trolinger proceeded to search the passenger compartment of the car.  In the back seat, he saw the open black bag with a box of ammunition lying on top that Karasek had seen.  Trolinger removed the ammunition and reached inside the bag, where he felt a handgun that he removed.  The gun was loaded.  In a compartment on the side of the bag facing the front seat, Trolinger found a small clear plastic bag containing numerous other small ziplock bags.[1]  Continuing his search, Trolinger found three marijuana cigarette butts in the front ashtray and marijuana residue all over the floorboard in the front seat.

Approximately twenty-five minutes after the initial stop, Trolinger received confirmation that the Nissan was stolen.  The officers seized the vehicle to impound it and informed Kelly and

---

[1]    Trolinger testified that Kelly told him that "they" put marijuana in the bags.  Kelly testified that she told Trolinger that she used the bags to package parts to pagers she used in her business when she sent them to be repaired.

McCaney that they were under arrest for the unauthorized use of a motor vehicle.[2]

Pursuant to the Kerr County Sheriff Department's unwritten policy to inventory all impounded vehicles, Trolinger and Karasek inventoried the car and its contents. Two pagers were found in the front seat and were seized. Under the hood, between a firewall and the quarter panel on the driver's side, Trolinger and Karasek found a paper bag. Inside the bag was a white plastic package wrapped with masking tape. They slit the plastic bag and found approximately 900 grams of cocaine inside. Both McCaney and Kelly were then transported to Kerrville.

McCaney was indicted for conspiracy to possess with intent to distribute and aiding and abetting the possession with intent to distribute in excess of 500 grams of cocaine. Before his bench trial, McCaney filed a motion to suppress the cocaine, which was carried with the bench trial. At the close of the evidence, the district court granted McCaney's motion to suppress as to the cocaine found under the hood and acquitted him. The district court noted that the officers had a right to search inside the car and stated that they had sufficient probable cause to obtain a warrant to search under the hood. The district court found, however, that

_____

[2] Kelly testified at McCaney's bench trial, and her testimony was introduced as an exhibit at her suppression hearing. Her version of the events between the time the car was stopped and the search under the hood is different in some respects from that heretofore recited in the text. However, given that the district court credited the testimony of the officers in determining there was probable cause to search the passenger compartment, we likewise credit the officers' testimony in establishing the facts relevant to that determination.

4

the search under the hood was not proper without a warrant as a valid inventory search because there was not sufficient proof as to the Kerr County Sheriff's Department's inventory policy.

Kelly was indicted for possession of cocaine with intent to distribute, and possession of a firearm during, and in relation to, a narcotics offense. Kelly filed a motion to suppress the evidence seized from the car and a motion to dismiss the indictment. The district court held a hearing on the motions on January 14, 1991. The transcripts of the testimony by Trolinger and Kelly from McCaney's trial were admitted as exhibits. The transcript of the district court's oral ruling on the motion to suppress in McCaney's case was also admitted as an exhibit. The district court granted the motion to suppress with regard to the cocaine found under the hood on the basis that it was not a proper inventory search.[3] The

---

[3]     The district court's comments at the hearing on Kelly's pretrial motions are somewhat ambiguous:

> "THE COURT: . . . .
>
> "The motion to suppress is granted. Okay.
>
> "I want to, I just--I want to make sure that everybody, that nobody misconstrues this really. In my opinion, maybe the officers were a little bit too eager, but you did absolutely correct. I'm not criticizing anything other than that inventory search. That's the only thing I'm--I do not, in my own personal, my own mind, I think there was enough there to do a total search of the car.
>
> "Had either, had number one, say a dog came around and sniffed around it and found, and smelled the thing. Or, number two, a warrant was, in fact, gotten from a mag to, you know, to search every nook and cranny of that car.
>
> "There was absolutely no evidence of cocaine, it seems to me, inside the passenger compartment or in the

5

district court subsequently entered an order granting the motion to suppress based on the findings of fact and conclusions of law orally made part of the record in McCaney's trial. The Government timely filed a notice of appeal.

## Discussion

The Government contends that the district court erred in granting Kelly's motion to suppress on three grounds. First, the Government argues that Kelly lacked standing to complain that the search of the engine compartment violated her Fourth Amendment rights. Second, it contends that the search of the engine was valid because it was based on probable cause. Finally, the Government urges that the district court erred in finding that the search of the engine was not conducted as part of a lawful inventory search of an impounded car. Because we find that the search was a proper warrantless automobile search based on probable cause, we do not reach the first or third issues.

The Government's next argument is that the search was a valid warrantless automobile search because it was supported by probable cause. Kelly responds that this issue has been waived because the Government did not raise it at the suppression hearing. While we

---

trunk. Now, of course there was those zip, those bags, those bags. *And, see that to me, would have been more than sufficient to go to a mag and say, hey look, we got some stuff, we got some stuff that's suspicious, give me a, give me a search warrant, and we're going to go through that vehicle completely.*

"And, that's the only thing I'm saying. I am not saying that they're, I'm not saying anything else. Okay." Hearing on Motion to Suppress at 22-23 (emphasis added).

6

will address the issue of waiver in more detail *infra*, we simply note at the outset that the issue of adequate probable cause was at least partially raised before the district court.[4]  Furthermore, the district court explicitly found that sufficient probable cause existed for the officers to have obtained a search warrant authorizing the search of the engine compartment.  The district court granted the motion to suppress not because it concluded that probable cause did not exist on the facts (indeed it found the exact opposite), but because it erroneously believed that a search warrant was necessary to search the engine compartment, despite the existence of probable cause to search the passenger compartment.

With regard to the substance of the Government's argument, it

---

[4]     The record reveals that at Kelly's suppression hearing, both the defense and the district court mentioned the issue of probable cause, although it was not addressed by the Government. Defense counsel summarized the district court's ruling in McCaney's bench trial as follows:

>        "I think, the court properly ruled at the time that the search of the passenger compartment of the car was proper.  Once the officer found, in plain view, the box of ammunition, he had at that point, *probable cause* to go on and search the rest of the car, incident to the arrest of the defendants for unlawful possession.

>        . . . .

>        " . . . I think the court properly ruled then that the gun found in the gym bag was not suppressed, but that the cocaine found under the hood was suppressed because the officers did not have *probable cause* to open the hood of the car without a warrant." Hearing on Motion to Suppress at 20-21 (emphasis added).

The district court also alluded to the presence of probable cause:  "See that to me, would have been more than sufficient to go to a mag and say, hey look, we got some stuff, we got some stuff that's suspicious, give me a, give me a search warrant, and we're going to go through that vehicle completely."  *Id.* at 23.

is well-established that warrantless searches of automobiles are permitted by the Fourth Amendment if supported by probable cause. *See United States v. Ross*, 102 S.Ct. 2157, 2164-65 (1982). In *Ross*, the Supreme Court confronted the issue of the scope of a warrantless automobile search:

> "The scope of a warrantless search based on probable cause is no narrower--and no broader--than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize." *Id.* at 2172.

The Court concluded that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 2173; *see also United States v. Sanchez*, 861 F.2d 89, 92 (5th Cir. 1988).

"Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989). "The factors relevant to probable cause are not technical ones, but rather `factual and practical ones of everyday life on which reasonable and prudent persons, not legal technicians, act.'" *Id.* (quoting *United States v. Tarango-Hinojos*, 791 F.2d 1174, 1176 (5th Cir. 1986)).

In the present case, Trolinger and Karasek observed numerous factors that led them to believe that the vehicle contained contraband. First, Trolinger stopped the car in which Kelly was a passenger for speeding. McCaney, the driver of the car, did not have a valid driver's license, and Trolinger discovered that the

8

car was reported stolen. As Trolinger approached the car, he detected "the distinct odor of burnt marijuana." *Id.* We have previously held that this in itself would have justified the subsequent search of the car, including locked compartments like the trunk. *Id.; see also United States v. Hahn*, 849 F.2d 932, 935 (5th Cir. 1988). Furthermore, Karasek saw a box of ammunition sitting on the sports bag in the back seat. Karasek conveyed this information to Trolinger. Trolinger then searched the open sports bag and found a loaded handgun. In the front of the passenger compartment, he found marijuana residue and three marijuana cigarette butts. Under the totality of the circumstances, Officers Trolinger and Karasek had probable cause to believe that the car contained evidence of illegal drug trafficking, and thus had the right to search all of the car, including the locked trunk and engine compartment, and any container within it that could conceal the object of the search. *See United States v. Loucks*, 806 F.2d 208 (10th Cir. 1986). Thus, we are forced to conclude that the district court erred as a matter of law in concluding that a warrant, in addition to probable cause, was necessary to enable Officers Trolinger and Karasek to search the engine compartment.

Regardless of the district court's error in finding that the search of the engine compartment violated the Fourth Amendment because the officers did not obtain a warrant, the issue of whether the Government is entitled to the relief it requests remains. At the suppression hearing, the Government relied solely on the theory of a valid inventory search to justify the search under the hood of the car. While the issue of probable cause was raised tangentially

9

by the defense and the district court, it was not raised directly with respect to the search of the engine compartment, and it was certainly never advanced by the Government.[5]  We note, however, that this is not a typical waiver situation because the evidence regarding probable cause was fully developed at the hearing and the district court even made a finding that probable cause did exist.

Our general rule is that "issues raised for the first time on appeal `are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice.'"  *United States v. Garcia-Pillado*, 898 F.2d 36, 39 (5th Cir. 1990) (quoting *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985)).  While we have not applied the plain error standard in the context of an argument that the Government failed to raise at a suppression hearing, at least one other circuit has.

---

[5]  We recognize that there are cases in which federal courts have held that the Government's failure to raise the issue of probable cause at the suppression hearing precludes the Government from raising the issue on appeal.  *See, e.g., United States v. Scales*, 903 F.2d 765, 770 (10th Cir. 1990); *United States v. Thompson*, 710 F.2d 1500, 1503-04 (11th Cir. 1983), *cert. denied*, 104 S.Ct. 730 (1984).  However, in these cases, not only did the Government not argue during the suppression hearing that probable cause existed, the Government conceded that probable cause did not exist.  *See Scales*, 903 F.2d at 770 ("Not only did the Government not make this argument below, . . . it agreed with the court that the facts prior to the dog sniff gave rise only to a reasonable suspicion of criminal activity.  . . . The district court made no findings to support a conclusion of probable cause prior to the drug dogs' alerting on the luggage."); *Thompson*, 710 F.2d at 1504 ("The record of the suppression hearing reveals that government counsel not only failed to argue the existence of reasonable suspicion, but expressly conceded the issue.").  We have not found any cases holding that the Government is barred from raising the issue of probable cause on appeal where, as here, the evidence regarding probable cause has been fully developed and the district court made findings at the suppression hearing that probable cause existed.

*See United States v. McNulty*, 729 F.2d 1243, 1264, 1269 (10th Cir. 1984) (on rehearing en banc). We see no reason not to apply the plain-error standard in this context.

In the instant case, it is clear that what is involved is purely a legal question. We are also convinced that the failure to consider it will result in manifest injustice. The result of the district court's erroneous application of the law is the dismissal of charges against Kelly. Moreover, where standing is held waived, this does not lead to suppression unless there has been a Fourth Amendment violation.[6] Here, by contrast, the evidence and findings demonstrate that the officers' actions were constitutional. Further, this is not a situation as in *Garcia-Pillado* where the Government's failure to raise the issue below resulted merely in a small reduction in the length of the defendants' sentence. Instead, the result of the government's delinquency in the instant case is the dropping of all charges against Kelly. Because it is apparent that the record is fully developed in this respect, that probable cause existed to search the engine compartment and that the district court entered findings to that effect, because the legality of the search is purely an issue of law, and because manifest injustice will result if we do not address this issue, we hold that the search under the hood was proper and the district court's order suppressing the cocaine found under the hood must be reversed.

---

[6] *See, e.g., United States v. Maestas*, 941 F.2d 273, 276 n.2 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 909 (1992).

11

## Conclusion

Because the district court erred in holding that the search of the engine compartment was improper without a warrant, we reverse the district court's order granting Kelly's motion to suppress and remand for trial on the merits.

REVERSED and REMANDED