**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tomas VARELA–ANDUJO,
Defendant-Appellant.**

**Nos. 84–1415, 84–1510.
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1984.

---

Vernon D. Flournoy, San Antonio, Tex. (court-appointed), for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Daniel Maeso, Richard L. Durbin, Jr., Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Tomas Varela-Andujo, was convicted of five counts of having unlawfully transported aliens illegally in the United States in violation of 8 U.S.C. § 1324(a)(2). He has appealed his conviction (84–1510) and has appealed the denial of motions for a new trial (84–1415). The cases have been consolidated by order of this Court.

■ The critical issue in this case is whether Immigration and Naturalization Service Agent Wise was justified in stopping the pickup truck in which the aliens were being transported under the reasonable suspicion standard required by *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

Agent Wise stopped the pickup truck in which the illegal aliens were being transported east of San Antonio, Texas, on Interstate Highway 10, the main highway between San Antonio and Houston. The stop was over 170 miles from the Mexican border. The government collects and urges the typical factors in undertaking to justify the stopping of the vehicle. The three passengers in the cab were obviously Mexican-American. Two of them were claimed to be disheveled, tired, and wearing dirty clothes. Agent Wise drove alongside the truck on the four lane highway for some distance. The driver of the pickup acknowledged his presence, but the two passengers did not. It should be emphasized, however, that Wise was driving an unmarked automobile, and there would be no reason to suppose that he was anything other than another private citizen driving toward Houston. The government also em-

phasized the highway is often used to transport illegal aliens and that Wise is experienced in apprehending those who transport illegal aliens along this stretch of the highway.

These general facts alone might well be inadequate to justify stopping the vehicle. Agent Wise also noticed, however, that a substantial portion of the bed of the pickup truck was covered by a piece of plywood and then by a tarpaulin. At this point, the agent exercised his ingenuity and his knowledge of the highway along this stretch. He sped up and passed the pickup truck and at an overpass on down the road went off the highway and drove up on the overpass and watched the pickup truck pass underneath. As the truck did so, he observed a human knee protruding from under the tarpaulin and a hand grasping and holding down the tarpaulin. Having thus concluded that at least one person was lying concealed under the makeshift arrangement in the back of the pickup truck, he radioed for assistance, and the pickup truck was stopped.

After the truck was stopped he again saw a knee and a hand protruding from the tarpaulin as he stood near the rear of the truck where he had been met by the driver. At this point the driver conceded that he had four "wetbacks" under the tarpaulin in the back of the panel truck.

Considering all the factors, particularly with emphasis upon the positive discovery that the makeshift arrangement in the back of the pickup was being used to conceal at least one person lying down in the truck, we conclude that the district court properly found that Agent Wise had the reasonable suspicion necessary to justify the stop. Wise was not justified in believing that the vehicle had crossed the border, but the arrangement of the bed of the pickup truck and the fact that persons were lying underneath the cover constituted adequate "articulable facts" to justify reasonable suspicion. Aspects of the vehicle itself are one of the justifiable grounds for suspicion. *United States v. Brignoni-Ponce,* 422 U.S. at 884, 95 S.Ct. at 2581. Compare particu-larly *United States v. Salazar-Martinez,* 710 F.2d 1087 (5th Cir.1983), which upheld a stop along the same stretch of highway involved in the principal case. In that case a large American passenger car was observed to contain male passengers of Latin American extraction who were unkempt and not well-dressed. Some of them were kneeling or sitting on the floor of the car in addition to the passengers sitting in the seats.

The *Salazar* case is a much closer case, *c.f., United States v. Pena-Cantu,* 639 F.2d 1228 (5th Cir.1981), than the case which is before us here. Three Mexican American males riding in a pickup truck driving along a highway from San Antonio to Houston would hardly be enough to create a reasonable suspicion, whether or not they shun eye contact with the officer riding alongside in an unmarked car. *United States v. Pacheco,* 617 F.2d 84, 86 (5th Cir.1980). The additional fact of the make-shift arrangement for covering most of the bed of the pickup truck might or might not have added sufficient justification for a stop. Agent Wise himself obviously doubt-ed justification for a stop at this point. But his knowledge of the highway enabled him to get a look from above at the pickup truck. His observation revealed that at least one person was lying underneath that makeshift cover, holding down one corner of it. This additional observation, added to the other facts, constituted enough of a showing to justify a finding of reasonable suspicion.

■ Once the stop was made, the driver had already admitted carrying illegal aliens lying down in the back of the pickup before it was searched. Also Wise could continue to see someone's knee protruding from the tarp in the back of the truck before the search of the pickup. The search after the stop clearly was justified. *Almeida-San-chez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

We must conclude that stopping the vehicle was justified on reasonable suspicion and that the evidence obtained by the stop

was properly admitted to prove the transporting of illegal aliens.

The appellant also raises a question based upon the claim that his attorney received a call from one of the jurors after the trial indicating that the verdict was not truly his own and stating that at least two other jurors felt the same way. At this point appellant filed motions to interview the jurors, to set aside the guilty verdict, and for a new trial. Since in Texas post-trial interviews of jurors are the norm rather than the exception, it may be difficult for Texas lawyers to accept the well-established federal rule that prohibits post-verdict interviews of jurors. *United States v. Davila,* 704 F.2d 749, 754 (5th Cir.1983). Only where there is a showing of illegal or prejudicial intrusion into the jury process will the court sanction such an inquiry. *United States v. Riley,* 544 F.2d 237, 242 (5th Cir.1976), *cert. denied,* 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977). There is no reason to believe on the basis of appellant's contention that the jury engaged in any misconduct, or based its verdict upon matters outside the record or other improper considerations.

The appeals in both 84–1415 and 84–1510 are without merit.

84–1415 AFFIRMED.

84–1510 AFFIRMED.