UNITED STATES of America, Plaintiff,

v.

Franklin MILITELLO, et al., Defendants.

Crim. A. No. 86–172 (JFG).

United States District Court, D. New Jersey.

Nov. 17, 1987.

Samuel A. Alito, Jr., U.S. Atty. by Victor Ashrafi, Deputy Chief, Crim. Div., Newark, N.J., for plaintiff.

John F. McMahon, Federal Public Defender, Dist. of New Jersey by John J. Hughes, Asst. Federal Public Defender, Trenton, N.J., for defendant George Pepe.

## OPINION

GERRY, Chief Judge:

### FACTUAL BACKGROUND

This unique case arises from the aftermath of a complex, multidefendant prosecution involving conspiracy to distribute and possession with intent to distribute cocaine under 21 U.S.C. § 846. From an original indictment naming fifty defendants, seven ultimately chose not to plead guilty and were tried together in this court. After a protracted trial, the jury returned a verdict convicting five of the seven defendants, and finding one not guilty. As to the seventh defendant, George Pepe, the jury was unable to reach a decision. The court

then granted a mistrial as to that defendant.

Several weeks after the trial, some of the convicted defendants filed motions alleging that Pepe had engaged in improper communications with one of the jurors in the trial, a woman named Patricia Hand. In response to these motions the court conducted an evidentiary hearing during which Hand, numerous jurors, and others testified. The court did not at that time permit the questioning of jurors regarding events within the jury deliberation room. From the testimony at the hearing, it became clear that there had indeed been contact between defendant Pepe and juror Hand at or about the time the jury was deliberating.

According to one witness at the hearing, Cathy Helen Mary Becker, a waitress at a restaurant near the courthouse, Hand had engaged her in conversation one day in the restaurant about one of the defendants in the trial. This defendant turned out to be George Pepe. Becker testified that Hand had given Becker a note, asking her to deliver it to Pepe. The note, according to Becker, said "[s]omething to the effect that I'm in your corner and I'm rooting for you," and contained Hand's telephone number. (Tr. at 239). After mistakenly attempting to deliver the note to one of the other defendants, Becker said, she finally gave the note to Pepe when he came into the restaurant and identified himself to her.

The next step in this affair occurred when Pepe placed flowers in the door handle of Hand's gray Saab (although she usually drove a red Porsche to court), which was parked in a lot near the courthouse. As is polite when leaving flowers for a lady, there was also a note with the words "a friend" tastefully inscribed. The flowers were followed by an evening telephone call from Pepe to Hand during which, Hand testified, Pepe asked her "how he was doing," (Tr. at 62) and asked if he could meet Hand somewhere. (Tr. at 64). Hand stated she refused to meet with Pepe.

In addition to the above, Hand also testified that she was not the one to first make contact with Pepe, but that she only asked Becker to deliver a note to Pepe after Pepe had left the flowers on her car. She further testified that she attempted to pass another note to Pepe through Becker after the telephone call, telling Pepe that she was scared. Becker testified that she never delivered this note. Hand also stated that she never discussed her communications with Pepe with any of the other jurors.

As a result of the testimony at the hearing, we vacated the verdicts of those defendants who so moved and granted their motions for a new trial. Since that time all of these defendants entered pleas of guilty to these or to related charges.

Pepe was subsequently indicted by a federal grand jury on two counts each of unduly influencing a petit juror under 18 U.S.C. § 1503, and aiding and abetting the same under 18 U.S.C. § 2. The government now moves under Rule 19(B) of the General Rules of the United States District Court for the District of New Jersey (hereinafter the "Local Rules") for permission to conduct more probing interviews of selected jurors regarding their deliberations during the Militello trial as well as the activities of Hand during those deliberations, with an eye to determining whether any of the jurors should be called as witnesses in Pepe's new trial for influencing a juror. That trial has been assigned to another federal judge who has scheduled it for November 18, 1987.

## EX–JUROR INTERVIEWS UNDER THE LOCAL RULE

Local Rule 19(B) provides that

[n]o attorney or party to an action shall personally or through any investigator or other person acting for such attorney or party, directly or indirectly interview, examine or question any juror, relative, friend or associate thereof during the pendency of the trial or with respect to the deliberations or verdict of the jury in any action, except on leave of Court granted upon good cause shown.

As is clear from a reading of the rule, it does not on its face prohibit the questioning of jurors with respect to their delibera-

tions or verdict; it rather permits such questioning with leave of the court. Nevertheless, the requirement of good cause shown is a necessary screen to the granting of such leave since the matter of questioning jurors about their deliberations is a sensitive one. "The prevention of fishing expeditions in search of information with which to impeach jury verdicts" is the principal purpose of such a rule. *United States v. Davila,* 704 F.2d 749, 754 (5th Cir.1983) (commenting on a Western District of Texas local rule very similar to the one involved here). This type of a rule is a codification of the historical practice in federal courts in which post-verdict interviews are usually allowed only where there is some showing of illegal or prejudicial intrusion into the jury process. *Id., citations omitted, see also United States v. Varela–Andujo,* 746 F.2d 1046, 1049 (5th Cir.1984). A high threshold for such interviews is maintained to avoid harassment of jurors, preserve the finality of judgments, discourage meritless applications for post-verdict hearings, reduce the likelihood of and temptation for jury tamperings, as well as other concerns. *See, e.g., Sullivan v. Fogg,* 613 F.2d 465, 467 (2d Cir.1980).

■ Given this appropriate reluctance on the part of the federal courts to permit post-verdict juror interviews, such interviews are nevertheless appropriate where there are reasonable grounds to believe that there has been jury tampering. A showing of such grounds "will trigger a post-verdict exploration of the 'entire picture.'" *Id., citing Remmer v. United States,* 350 U.S. 377, 379, 76 S.Ct. 425, 426, 100 L.Ed. 435 (*Remmer II* 1956); *second citation omitted.* The government, in this light, asks for leave to interview certain select jurors about Hand's conduct in the jury deliberation room. Furthermore, the United States Attorney wishes to inquire into the numerical breakdown of the votes the jury cast regarding Pepe's verdict. This inquiry would include the number and timing of votes taken on Pepe's verdict, but would not, with the exception of Hand, probe into who voted what way. Due to the unique circumstances comprising the matter before us, and based on our belief

that allowing interviews in this instance would not impugn the integrity of the jury system, we find that reasonable grounds constituting good cause exist for granting the government's motion. Our order to that effect, however, will be strictly drawn and circumscribed.

■ In the first instance, leave will be granted to interview only a few select jurors. These will include Hand, Barbara Deschler, foreperson of the jury and someone who saw the flowers on Hand's car and who had at least two brief communications about them with Hand, Vanessa Phillips, another witness to the flowers on the car as well as a "contact person" for the jurors once the trial was over, and Frederick Blair, a juror chosen more or less at random by the government. Questions concerning events in the jury deliberation room will be permitted as to the conduct of Hand both in how she expressed or did not express herself, and how she acted or did not act. Inquiries as to the votes cast will be limited to however many votes may have been taken regarding Pepe's verdict, the times these votes were taken along with the anonymous numerical breakdown of each vote, and the way Hand voted during each of these votes. It should be here noted that under the local rule, the government obviously has the right to interview *any* juror/witnesses on matters *extraneous* to the jury deliberation room.

■ Furthermore, our granting of the government's motion applies to both sides of the aisle. Pepe is still a defendant in the related prosecution. As such, his attorney will be given leave to interview the same ex-jurors to the same extent as may the government. Whatever benefit and easier access to witnesses may result from a court order should accrue to both sides.

■ Finally, and perhaps most importantly, our order will be a non-compulsive one. By this we mean that those jurors named above will not be required to speak to anyone if they so choose. While free to do so, they have no legal obligation to speak; our order merely grants leave to the parties to interview *willing* jurors.

Such a restriction on the parties is clearly appropriate given the sensitive nature of this matter. *Cf. In re Express–News*, 695 F.2d 807, 811 (5th Cir.1982) (court may instruct jurors they need not speak to media organizations given leave by the court to do interviews).

We feel that the above restrictions greatly diminish the risk that our resolution of the government's application would become a precedent that could chill future jurors from freely expressing their opinions in the deliberation room. First, our granting of the government's motion cannot be seen by jurors as a precedent that they could later be compelled to disclose discussions they had engaged in under the promise of confidentiality. Second, the concern that the permitted inquiry may create an institutional risk to the functioning of a jury and the administration of justice seems overblown when one realizes that it would constitute no precedent whatsoever except in the extraordinary future circumstance where the argued intrusion would be limited not to instances of merely suspected jury tampering, but where, as here, the authorizing court as well as a federal grand jury have heard competent proof warranting court, judicial, and grand jury action. Rare indeed would be the future circumstances where our involvement here would provide any type of precedent.

We should not be surprised, certainly, that an individual for whom a grand jury has found probable cause to indict for jury tampering should be more recently concerned with the sanctity of jury deliberations and the integrity of the judicial process. Such a defendant has a natural interest in depriving the government of access to juror/witnesses who he believes may be helpful in establishing his guilt. The government, however, has a countervailing interest—indeed, a duty—to vigorously but fairly prosecute anyone reasonably implicated in the contamination of the jury process.

We are satisfied that our approach walks the proper line between these two interests without intervening in any significant way with the jury process. One fear often articulated in opposition to juror interviews is that such contact could be used by parties dissatisfied with the jury's verdict to seek out any discordant note in a meritless attempt to attack the jury's decision. That factor is not here present, however, as there is no jury product to attack. The jury's verdicts have already been set aside by this court and no target even arguably exists for a challenge by a disgruntled litigant through intrusive inquiries into the minds of ex-jurors. The purpose of our order is not to enable the government to undertake to attack the verdict. As the Sixth Circuit wrote in *United States v. Penny*, 416 F.2d 850, 853 (6th Cir.1969), *cert. denied*, 398 U.S. 932, 90 S.Ct. 1832, 26 L.Ed.2d 98 *reh'g denied*, 399 U.S. 917, 90 S.Ct. 2214, 26 L.Ed.2d 577 (1970), upholding a district court which permitted the government to question jurors about suspected tampering, "[a]t the time the court permitted Government counsel to interview the jurors, judgment had already been rendered and sentence passed. The interviews were limited to an investigation of jury tampering of which there was already evidence of record in the case."

Seen against this backdrop, this case will serve as no precedent for disgruntled losing parties in their effort to elicit from jurors evidence of defects in the jury's product. The compelling interest of the federal courts and the government in the effective prosecution of efforts to corrupt the administration of justice alone justifies this appropriately rare inquiry into the named jurors' deliberative processes.

APPLICABILITY OF FEDERAL RULE OF EVIDENCE 606(b)

■ Nor do we see Federal Rule of Evidence 606(b) as a bar to granting the government's motion. That rule provides in relevant part that

[u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or

indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Since there is no inquiry here into the validity of a verdict (the verdicts having been already vacated) or an indictment, Rule 606(b) appears not to directly apply to the matter at hand. Furthermore, the rule by its plain language focuses on the "testimony" of jurors. The choice of the word "testimony" seems to contemplate some type of formal institutional proceeding, not the informal post-verdict interview of ex-jurors by parties to the old case. Rule 606(b) can be seen as an "exclusionary rule," *see* *United States v. Moten,* 582 F.2d 654, 664–65 (2d Cir.1978), and as such determination of its applicability to the matter at hand is best left for the judge sitting in Pepe's new trial.

## RELEVANCE OF EX–JURORS' RESPONSES

■ Finally, we address a related question, that of the relevance of whatever the named jurors may say when they are interviewed by either side in Pepe's trial for tampering with a jury. The court has been urged by the defendant to require a government showing of compelling need for such juror information. Local Rule 19(B), however, does not require any more than the government's demonstration of "good cause shown."

Under the peculiar circumstances present in this matter, the court believes that at this point in time before this court and this judge, the government has satisfied its burden by a showing of colorable relevance. Despite the sensitivity of the institutional interests, however, this is but a minimal showing, and it will fall to the trial judge, from his or her superior position, ultimately to determine the relevance (as well as the admissibility) of the information sought and obtained from the former jurors.

More specifically, the votes cast during the deliberative process by juror Hand and the extent to which, if at all, they were corruptly influenced may more accurately be assessed in the context of the progress and division of the votes cast on Pepe's verdict. Furthermore, Count Two of Pepe's new indictment charges that he "knowingly, wilfully and corruptly *did* influence, obstruct and impede" the due administration of justice, as well as endeavoring to do so (emphasis supplied). Clearly, then, knowledge of the relation, if any, between the number and timing of votes on Pepe's verdict and Pepe's contacts with Hand will go a long way in showing the extent to which Pepe "did" obstruct justice. Seen in this light, the progress and division of voting is not only arguably relevant, but may well even prove significantly if not conclusively advantageous to Pepe and could undoubtedly trigger *Brady* obligations.

It is also not an unworthy or inappropriate objective of the government to seek from juror/witnesses corroboration for the anticipated testimony of its cooperating witness Patricia Hand. Having conducted post-trial evidentiary hearings, this court is in a particularly favorable position to understand the government's concerns for her impeachment at the time of trial.

Based on all the above, it is this court's belief that our authorization is as narrowly structured as is necessary to serve the legitimate interests of the defendant, the government and the protection of the orderly processes of the administration of justice.

An order will be entered consistent with this opinion to take effect immediately after the ruling of the trial court in *United States v. Pepe* (Indictment No. 87–271) on the motion of defendant to disqualify two Assistant United States Attorneys.