**UNITED STATES of America, Plaintiff,**

v.

**John GOTTI and Frank Locascio, Defendants.**

**No. CR–90–1051(S–1).**

United States District Court,
E.D. New York.

Feb. 11, 1992.

Andrew J. Maloney, U.S. Atty., John Gleeson, Laura Ward and Patrick Cotter, Asst. U.S. Attys., Brooklyn, N.Y., for U.S.

Albert J. Krieger, Miami, Fla., for John Gotti.

John W. Mitchell, New York City, and Anthony M. Cardinale, Boston, Mass., for Frank Locascio.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendants have moved this court for an order disclosing the names of the persons who served as jurors in two previous trials in this district, anonymously in the case of *United States v. John Gotti, et al.*, CR–85–178 (EHN) and not anonymously in the case of *United States v. Edward Leno*, CR–83–483 (JMM).[1] The reasons advanced to support the relief they seek are: (1) the government's assertion that it will seek to prove a conspiracy to bribe and an actual bribe of a juror in the *Gotti* case, and (2) the government's representation that it will offer proof of jury tampering in the *Leno* case. The names of the jurors, they contend, are therefore necessary to enable them to prepare their defense.

At the outset it is important to note that neither the government nor the defendants seek to impeach the verdict of the jury in either case. The issue arises solely because the government represents that it will, in this case, seek to prove that the defendants endeavored to tamper with the

---

1. Although the *Leno* jurors were not empaneled anonymously, in requesting permission to interview them, the defendants manifest a commendable attention to *United States v. Brasco*, 516 F.2d 816 (2d Cir.), *cert. denied*, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975), in which the Court had occasion to note that a "post-trial inquisition of ... jurors ... is reprehensible, to say the least." *Id.* at 819 n. 4.

jury in each of the aforementioned cases. With the issue thus discretely framed, the court is driven to conclude that the defendants' motion must be denied.

The cases upon which the defendants rely will be considered in turn. In *United States v. Ianniello*, 740 F.Supp. 171 (S.D.N.Y.1990), the United States Court of Appeals for the Second Circuit had directed the district court to hold further proceedings in accordance with the opinion in 866 F.2d 540 (2d Cir.1989), familiarity with which is assumed. At issue in that case was a motion for a new trial made by convicted defendants who claimed that the trial judge had *ex parte* communications with a deliberating jury and that a federal marshal made an improper statement to that jury; defendants asserted that they were thereby deprived of their due process right to a fair trial. Counsel, at page 2 in their memorandum of law ("Def.Mem.") in support of their motion, selectively cull the following language from the district court's opinion at page 177:

> The right to assistance of counsel does not end with the judgment of conviction.... Any rule necessitating such a [result] would so limit counsel as to deny criminal defendants their Sixth Amendment right to effective representation. It would burden the courts with meritless—and, by definition, unexamined—allegations.

Omitted from the quoted language is the following:

> We can conceive of no reason why counsel for criminal defendants should be forced either to await the fortuity of media investigation or to file unsubstantiated motions *to impeach a verdict* based only on suspicion. (Emphasis added).

The remarks of the court were made in the context of commenting upon the propriety of a private investigator questioning jurors in the light of *Brasco*. In any event, it is clear that the defendants in *Ianniello* were seeking to impeach a verdict and that the court was not determining a motion to obtain the names of jurors or permission to interview them. It is also significant to note that the jury in *Ianniello* was not an anonymous jury, although the defendants intimate (Def.Mem. at 2) that it was ("As Chief Judge Brieant of the Southern District has observed in finding post-verdict jury anonymity inapplicable....").

 The importance of distinguishing a case in which a verdict is sought to be impeached on grounds of juror misconduct from a subsequent prosecution of the same defendant for jury tampering is crucial. In the former case, weighing heavily in the balance favoring juror interviews is the integrity of the judicial process and the societal interest in just verdicts. To vindicate those interests a juror may testify and may therefore be asked if any extraneous prejudicial information was improperly brought to her attention or whether any outside influence was improperly brought to bear upon any juror. Fed.R.Evid. 606(b). In the latter case, the same concerns are not implicated. The first jury's deliberations simply are not relevant to a charge that the defendant conspired to or actually did tamper with a juror.

*United States v. Militello*, 673 F.Supp. 141 (D.N.J.1987), upon which the defendants also rely, falls peculiarly between those two categories. In that case, a jury which was not anonymous was unable to reach a verdict as to Pepe, one of the defendants. It was subsequently revealed that Pepe had engaged in improper communications with Hand, one of the jurors in the trial. Pepe was subsequently indicted for jury tampering and the government moved, pursuant to General Rules of the United States District Court for the District of New Jersey, for permission to interview selected jurors with an eye to determining whether any of them should be called as witnesses in the new trial against Pepe for influencing a juror. The court granted permission to interview only a few select jurors and extended that permission to Pepe as well since he was still a defendant in the related prosecution.

The court recognized that post-verdict interviews are allowed in federal courts only where there is some showing of illegal or prejudicial intrusion into the jury process

and that a "high threshold for such interviews is maintained to avoid harassment of jurors, preserve the finality of judgments, discourage meritless applications for post-verdict hearings, reduce the likelihood of and temptation for jury tampering as well as other concerns." 673 F.Supp. at 144. The court found, following a hearing, that the required threshold was reached, and fashioned a rigidly restricted order which was not compulsory on the few jurors permitted to be interviewed. In doing so the court was careful to note that the purpose of its order was not to enable the government to attack the verdict in the first trial, but to permit an investigation of jury tampering of which there was already evidence in the record. "The compelling interest of the federal courts and the government in the effective prosecution of efforts to corrupt the administration of justice alone justifies the appropriately rare inquiry into the named jurors' deliberative process." 673 F.Supp. at 145. It is the last observation which required the disclosure (to differentiated investigative personnel) of the names of the anonymous jurors in the *Gotti* trial—"the compelling interest" to prosecute those who would corrupt the judicial process.

In its memorandum in opposition to the defendants' request, the government represents its "stated intention to offer evidence at this trial of *efforts* by the defendants to influence the jury in each of [the] two trials" (emphasis added). Gov't.Mem. at 1. Again on page 2 of that memorandum, the government states that "the evidence we will offer at trial relates to *efforts* to influence directly one juror from each prior trial" (emphasis added). And on page 3 of that memorandum, the government represents yet again that "we will present evidence showing that persons acting on behalf of John Gotti and others *sought* to influence directly two jurors" (emphasis added). At the oral argument on this request, the government again indicated that its proof would be of an endeavor to obstruct justice. Transcripts of proceedings, February 3, 1992, p. 589, lines 9–14.

■ A close reading of *Militello* would suggest that there were two considerations which were determinative. Count Two of the new indictment of Pepe charged that he

> "[K]nowingly, wilfully and corruptly *did* influence, obstruct and impede" the due administration of justice as well as endeavoring to do so (emphasis supplied). Clearly, then, knowledge of the relation, if any, between the number and timing of votes on Pepe's verdict and Pepe's contacts with Hand will go a long way in showing the extent to which Pepe "did" obstruct justice. Seen in this light, the progress and division of voting is not only arguably relevant, but may well even prove significantly if not conclusively advantageous to Pepe and could undoubtedly trigger *Brady* obligations.

673 F.Supp. at 146. Upon the understanding that the government's proof will seek to establish only an *endeavor* to tamper with the jury, factors such as the progress and division of voting and the names of the jurors are totally irrelevant and *Militello* is, on that ground, inapposite.

The second consideration alluded to is to be found in the following observation of the court:

> It is also not an unworthy or inappropriate objective of the government to seek from juror/witnesses corroboration from the anticipated testimony of its cooperating witness Patricia Hand. Having conducted post-trial evidentiary hearings, this court is in a particularly favorable position to understand the government's concerns for her impeachment at the time of trial.

673 F.Supp. at 146.

■ It is plain that the court in *Militello* determined that the testimony of other juror/witnesses, if offered, would be substantively relevant on Count Two of the indictment.[2] The government here states

---

**2.** As the *Militello* court itself acknowledged, that case dealt with "unique circumstances". 673 F.Supp. at 144. That uniqueness, and the consequent inapplicability of *Militello* to this case, is underscored by the court's observation that "[u]nder the peculiar circumstances present in this matter ... at *this* point in time before *this* court and *this* judge, the government has satis-

that it has not yet isolated the *Leno* juror and will make known to the defendants the name of the juror influenced in the *Gotti* trial. (Gov't Mem. at 2). There is no indication that other juror/witnesses will be called and *Militello* is, on that ground, also inapposite. The defendants will have the opportunity to cross-examine the *Gotti* juror, whose identity the government is under no obligation to reveal in advance.

 The defendants further request the names of all of the jurors so that they may be called to testify that no effort was made to tamper with them. Def.Mem. at 4. Such evidence would be irrelevant and therefore inadmissible. "A defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir.1990). Similarly, a defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B.

 The defendants' reliance upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) as requiring the government to disclose the names of the anonymous jurors it obtained is, for the reasons discussed, misplaced. The testimony of those jurors would be inadmissible and therefore could not be exculpatory. Insofar as the defendants request the court to permit an inquiry of the *Leno* jurors, there has been no showing of any reason why such inquiry should be authorized, given the sensitive concern the courts have consistently displayed to prevent the needless harassment of jurors; nor have the defendants shown any basis upon which information necessary to preparing a defense on this issue could conceivably be obtained.

For the foregoing reasons, this motion is denied.

SO ORDERED.

fied its burden by a showing of colorable relevance." *Id.* at 146 (emphasis added).