42 F.3d 1398
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jesus CHAVEZ, Plaintiff-Appellee,
v.
CITY OF LYNWOOD, Defendant,
and
Keith A. Fink, Esq., Appellant.
Jesus CHAVEZ, Plaintiff-Appellee,
v.
CITY OF LYNWOOD, Defendant,
and
Javier Clift; County of Los Angeles, Defendants-Appellants.
Jesus CHAVEZ, Plaintiff-Appellant,
v.
CITY OF LYNWOOD; Javier Clift; County of Los Angeles,
Defendants-Appellees.
 Nos. 93-55793, 93-55887, 93-55915 and 93-56226.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 31, 1994.
Decided Nov. 22, 1994.
 
 Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Defendant Javier Clift (Clift) appeals the district court's grant of the plaintiff's motion for a new trial, its admission and exclusion of certain testimony during the second trial, and its denial of his request for a third trial. Defense counsel, Paul Paquette (Paquette), appeals the district court's sanction against him. Finally, Clift appeals the district court's award of attorneys' fees, and the plaintiff, Jesus Chavez (Chavez), cross-appeals the award. We affirm the district court on all grounds except its reduction of attorneys' fees. With regard to this issue, we vacate and remand with directions to the district court to articulate its reasons for reducing the lodestar calculation by ten percent.
 
 DISCUSSION
 
 3
 1. Grant of motion for new trial.
 
 
 4
 Clift argues that the district court improperly relied on Paquette's opening statement alone to grant Chavez a new trial. While the district court stated in its denial of Clift's motion for reconsideration that "[e]ven if the evidence of gang membership were proper ... [t]he opening statement, without more, mandated a new trial," this conclusion was clearly an alternative holding. The district court's order granting a new trial indicated that it was not merely focusing on Paquette's opening statement, but was instead concerned about the defense's theory of the case as articulated by the opening statement. It held that this theory was "interwoven throughout the trial" and detracted from the crucial issues of Chavez's claim under 42 U.S.C. Sec. 1983. Thus, we hold that the district court properly focused on the entire trial. See Kehr v. Smith Barney, Harris Upham & Co., Inc., 736 F.2d 1283, 1286 (9th Cir.1984) (concluding improper statements were isolated rather than persistent and did not prejudicially permeate trial).
 
 
 5
 Clift also argues that, because Chavez did not object to Paquette's statement referred to in the district court's order, the statement cannot be the basis for a new trial. This argument is foreclosed by our conclusion that Paquette's opening statement was not the sole basis on which the district court relied to grant a new trial. Furthermore, Chavez was not required to object to every reference to gang activity during the trial. We have "reject[ed] an invariable requirement that an objection that is the subject of an unsuccessful motion in limine be renewed at trial." Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir.1986). Because "the substance of [Chavez's] objection [was] thoroughly explored during the hearing on the motion in limine, and the trial court's ruling ... was explicit and definitive, no further action [was] required to preserve for appeal the issue of admissibility of that evidence." Id. ; see also United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993) (holding that "[t]he interest of justice would not be furthered by requiring ... additional objection" after unsuccessful motion in limine ), cert. denied, 114 S.Ct. 1120 (1994).
 
 
 6
 We hold that the district court did not abuse its discretion in granting a new trial because it concluded that it erred in permitting testimony regarding gang membership to predominate the trial. See Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir.1990) ("[T]he district court had the ... duty ... to set aside the verdict ... even though supported by substantial evidence, where ... the verdict is contrary to clear weight of evidence, or to prevent ... a miscarriage of justice."); see also Fed.R.Civ.P. 61; Morgan v. Woessner, 997 F.2d 1244, 1261 (9th Cir.1993) (admission of inadmissible evidence grounds for new trial), cert. dismissed, 114 S.Ct. 671 (1994).
 
 
 7
 2. Evidentiary rulings.
 
 
 8
 a. Exclusion of Rogers' testimony.
 
 
 9
 Clift argues that the district court abused its discretion by excluding Rogers' testimony. However, his reliance on Potlatch Corp. v. United States, 679 F.2d 153 (9th Cir.1982), is misplaced. Unlike Potlatch, where the failure timely to disclose the content of expert testimony was beyond the control of the Government, § ee id. at 154-56, nothing in this case suggests Clift's failure timely to disclose Rogers as a witness was a result of circumstances beyond Clift's control. Instead, as the district court noted, the record indicates that Clift was aware of Rogers' testimony long before the eve of the second trial.
 
 
 10
 We hold that exclusion of Rogers' rebuttal testimony was proper, and that it "did not result in fundamental unfairness of the trial." Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir.1994), cert. denied, 1994 WL 533085 (Nov. 14, 1994). The rebuttal value of Rogers' testimony was minimal for two reasons. Chavez testified during trial that he had been fired from U-Haul because "they said I was stealing." Thus, the basis for the discharge and the controversy Clift sought to bring to the jury's attention was already before the jury. Also, U-Haul records indicated that Chavez was a productive employee prior to the injury but that he was fired for being unproductive after the injury. Consequently, Rogers' testimony would have failed to establish that Gross's expert opinion was baseless.
 
 
 11
 b. Admission of Petty's testimony.
 
 
 12
 Clift contends Petty's testimony was "without foundation because Petty had no medical expertise in interpreting either EEGs or clinical psychiatric findings, the two bases for the brain injury claim." However, Petty did not testify regarding Chavez's abnormal EEGs or any psychiatric findings. Instead, he merely testified that a superficial gunshot, which does not impact the skull, is not the type which would result in brain damage. Consequently, there was no need to establish a foundation for expertise in evaluating EEGs. We hold that the district court did not abuse its discretion by admitting Petty's testimony.
 
 
 13
 3. Denial of Clift's motion for new trial.
 
 
 14
 Clift argues that Fed.R.Evid. 606(b) does not prohibit the use of post-verdict juror interviews to establish a quotient verdict. First, he contends that Rule 606(b) precludes only the use of juror testimony to impeach a verdict and does not preclude the use of post-verdict juror interviews. For this proposition, Clift inappropriately relies on United States v. Militello, 673 F.Supp. 141 (D.N.J.1987). Unlike Militello, where the district court interviewed jurors to determine "whether any of the jurors should be called as witnesses in [the defendant's] new trial for influencing a juror," id. at 143, Clift seeks to use the post-verdict juror interviews to challenge the verdict rendered by the jury. Use of jurors' statements for this purpose is precisely that which is prohibited by Rule 606(b).
 
 
 15
 Second, Clift argues that because the jury was not yet discharged, but instead was required to proceed in the second trial regarding the County's liability, the juror interviews were part of the record and could be used to impeach the verdict. This contention is meritless. Although the jury was required to determine the liability of the County in another trial, its verdict with respect to Clift was final. The jury had already been polled after returning a special verdict and each juror agreed that the verdict, as read, was the verdict. "[O]nce a verdict has been returned ... it is no longer impeachable." United States v. Williams, 990 F.2d 507, 513 (9th Cir.1993) (addressing unanimity under Fed.R.Crim.P. 31(d)), cert. denied, 114 S.Ct. 333 (1993). We hold that the fact that the jury was not discharged for purposes of the County's trial does not make its verdict in Chavez's trial impeachable months after it was rendered.
 
 
 16
 4. Sanction against Paquette.
 
 
 17
 a. Jurisdiction to hear Paquette's appeal.
 
 
 18
 Chavez argues that we do not have jurisdiction to hear Paquette's appeal, relying on the Supreme Court's decision in Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988). However, Fed.R.App.P. 3(c), the rule upon which the Court in Torres relied, has been amended to state that "[a]n appeal will not be dismissed ... for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed.R.App.P. 3(c). "The language of, and advisory comments to, the amendments to Rule 3(c) indicate that [the aim of the amendment] was to overrule Torres and its progeny." Garcia v. Wash, 20 F.3d 608, 609 (5th Cir.1994).
 
 
 19
 Although Paquette's notice of appeal was filed prior to December 1, 1993, the effective date of the amendment, we have recently held that the amendments to Fed.R.App.P. 4(a)(4) are to be given retroactive affect. See Professional Programs Group v. Dept. of Commerce, 29 F.3d 1349, 1352 (9th Cir.1994); Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994). In accord with these cases, we hold that we have jurisdiction to hear Paquette's appeal because it is just and practicable to do so. See Garcia, 20 F.3d at 609 (applying amended Rule 3(c) retroactively). Paquette's name and address appear in the left-hand corner of the notice, and the notice states that "Defendant's counsel" appeals the sanction. Clearly, Chavez should have known that Paquette was Clift's trial counsel.
 
 
 20
 b. Sanction.
 
 
 21
 The district court has the inherent powers to impose sanctions. See Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (quotations omitted)). The district court specifically found that Paquette's statement was in bad faith. We agree. The statement had no bearing on the issues in the case, and Paquette's claim that the statement was supported by the evidence is without merit. We hold that the district court did not abuse its discretion in imposing the sanction for Paquette's bad faith attempt to divert the jury's attention.
 
 
 22
 5. Attorneys' fees.
 
 We have previously held that:
 
 23
 [P]ercentages ... are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards. However, decisions of district courts employing percentages in cases involving large fee requests are subject to heightened scrutiny and the use of percentages, in any case, [does not discharge] the district court from its responsibility to set forth a "concise but clear" explanation of its reasons for choosing a given percentage reduction....
 
 
 24
 Gates v. Deukmejian, 987 F.2d 1392, 1400 (9th Cir.1993). As in Deukmejian, the district court in this case failed to explain how it selected ten percent as the proper percentage for eliminating all duplicative services. Thus, we vacate the award of attorneys' fees and remand for a clear and concise explanation of the district court's reasons for reducing the lodestar calculation by ten percent.
 
 
 25
 AFFIRMED in part, VACATED and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3